IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| IN RE: | : | |
| MARIELEXYS CESTARY ROLDAN | : | CASE NO. 10-10792 (ESL) |
| Debtor | : | CHAPTER 13 |
| ---------------------------------------------------------- | : | |
| JOSE R. CARRION | : | ADVERSARY NO. 11-00094 |
| Chapter 13 Trustee | : | |
| Plaintiff | : | |
| vs. | : | |
| USDA RURAL HOUSING SERVICE | : | |
| Defendant | : | |
| | : | |

OPINION AND ORDER

This adversary proceeding is before the court upon a *Motion for Summary Judgment* (Docket No. 26) filed by the Debtor, subsequently adopted by the Chapter 13 Trustee (the "Trustee", Docket No. 46), seeking an order to have the USDA Rural Housing Service ("USDA") return to the bankruptcy estate her mortgage note for cancellation purposes and for the USDA's Claim No. 2 to be allowed as a general unsecured creditor. The USDA filed its *Opposition* thereto (Docket No. 27) also requesting that summary judgment be entered dismissing the instant *Complaint*, to which Debtor replied (Docket No. 32). The parties filed a *Joint Motion Submitting Uncontested Facts* (Docket No. 25) and filed their respective memoranda of law (Docket Nos. 27, 28 & 33). After considering all the arguments and pleadings, for the reasons stated herein, the Debtor's and Trustee's *Motion for Summary Judgment* (Docket Nos. 26 & 46) is granted and the USDA's *Opposition* (Docket No. 32) is denied.

Procedural Background

The Debtor filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on November 16, 2010 (Lead Case Docket No. 1). In Schedule A, Debtor listed two real properties, including Lot No. 75-G located in Urb. Altamira, Fajardo, Puerto Rico (the "Real Property") with a scheduled value of $90,000 (without deducting any secured claim or exemption) and a secured claim over it of $70,216 (Lead Case Docket No. 1, p. 21). The Debtor also included the USDA as

a secured creditor in Schedule D (Creditors Holding Secured Claims) in the amount of $57,903.00 (Schedule D, Lead Case Docket No. 1, p. 27). On December 10, 2010 and November 7, 2011, the USDA filed a secured proof of claim and an amended proof of claim, respectively, both in the amount of $86,790.87 (Claim Nos. 2-1 & 2-2).

On April 4, 2011, the Debtor filed the instant *Complaint* (Docket No. 1) claiming that she acquired and received possession of the Real Property on April 16, 1998 through a loan with the USDA, but that the latter filed and withdrew the mortgage deed from the Fajardo Property Registry (the "Property Registry"). The Debtor avers that after filing and withdrawing the same mortgage deed on several occasions, the latest refiling of those mortgage documents was on November 3, 2010 at Entry No. 779, Daily Register 229. Thus, she contends that because she filed for bankruptcy 13 days later (to wit, on November 16, 2010) the USDA's refiling of its mortgage deed constitutes a transfer of interest that occurred within 90 days prior to the bankruptcy petition and that as a result the mortgage lien can be avoided as a preferential transfer under 11 U.S.C. § 547(b). Based on the foregoing, the Debtor seeks a judgment against the USDA to return to the bankruptcy estate the mortgage note for cancellation purposes and to have the USDA's Claim No. 2 be deemed as unsecured.

On July 5, 2011, the USDA filed its *Answer to the Complaint* (Docket No. 15) admitting most of the factual allegations but denying the Debtor's legal conclusions. The USDA affirmatively alleges that the mortgage lien the Debtor seeks to avoid falls under the exception provided in 11 U.S.C. § 547(c)(3) for it enabled the Debtor to acquire the Real Property, and that the delay in the registration of the deeds of sale and mortgage at the Property Registry was the result of acts and/or omissions of third parties not attributable to the USDA. It also sustains that the transfer of interest in this case took place from the date of the initial filing of the deed of sale and mortgage, to wit, on May 11, 1998.

On November 11, 2011, the Debtor and the USDA filed a *Joint Motion Submitting Uncontested Facts* to which they attached the corresponding supporting documentary evidence (Docket No. 25). That same day, the Debtor filed her *Motion for Summary Judgment* and *Memorandum of Law in Support [Thereof]* (Docket Nos. 26 & 28), and the USDA filed its own

*Memorandum of Law and Request for Summary Judgment* (Docket No. 27). In essence, the Debtor sustains that the transfer of her interest in the Real Property happened on November 3, 2010 and that pursuant to Puerto Rico Law, the actual transfer of interest is not valid against her as a hypothetical judicial lien holder and thus can be set aside and avoided under 11 U.S.C. § 547 because it happened 13 days prior to the bankruptcy petition. Conversely, the USDA contends that the transfer of the Real Property occurred at the sale of the Real Property on April 16, 1998, to wit, 4,507 days prior to the bankruptcy petition and that therefore 11 U.S.C. § 547 is inapplicable.

On December 2, 2011, the Debtor filed her *Opposition to [USDA]'s Motion for Summary Judgment* (Docket No. 32). On December 5, 2011, the USDA filed an *Opposition to [Debtor]'s Memorandum of Law in Support of her Motion for Summary Judgment* (Docket No. 33).

On February 9, 2012, this court raised *sua sponte* its concern as to whether the Debtor had standing to exercise the avoidance powers granted to trustees in Sections 544, 545 and 547 of the Bankruptcy Code under the requirements established in Dickson v. Countrywide Home Loans (In re Dickson), 655 F.3d 585 (6th Cir. 2011) and issued an *Order* for the parties to file joint or separate briefs on that matter in 15 days (Docket No. 34). On February 23, 2012, the USDA filed a *Motion in Compliance* insisting on the dismissal of the instant case (Docket No. 36). Debtor initially requested an extension of time to comply with said *Order* indicating that the Chapter 13 Trustee (the "Trustee") was considering the possibility of joining her as a plaintiff in this case and that they would be meeting to that extent. On March 9, 2012, the Trustee filed a *Motion ... to Join the Above-Captioned Adversary Proceeding, to Ratify Averments and for Leave to Amend Complaint* (Docket No. 40). To that extent, the Debtor filed that same day a *Motion in Compliance with Order* asserting that in view of the Trustee's *Motion* (referring to Docket No. 40), the standing issue had become moot (Docket No. 41). On March 13, 2012, the court granted the Trustee's *Motion* (Docket No. 42). On March 19, 2012, the Trustee filed an *Amended Complaint* (Docket No. 44) only to eliminate references to the Trustee as defendant and be named as plaintiff. The USDA and the Trustee filed separate *Motions for [the] Disposition of Adversary Proceeding* on April 11 and 12, 2012, respectively, arguing that because no new allegations had been made, and having the standing controversy been surpassed, the court was in position rule upon the dispositive motions submitted

by the Debtor [as upheld by the Trustee] and the USDA (Docket Nos. 45 & 46).

<u>Material Uncontested Facts</u>

After considering the totality of the record, including the *Joint Motion Submitting Uncontested Facts* (Docket No. 25), the following material facts are uncontested:

1.     On April 16, 1998, the Debtor purchased the Real Property located at Lot No. 75-G, Urb. Altamira, Fajardo, Puerto Rico.  On that same date, *Deed of Purchase* No. 32 (the "*Purchase Deed*") was executed before Notary Public Rosa Permuy Calderón whereby the Debtor acquired the Real Property from Xuapa, Inc.

2.     The Debtor acquired the Real Property to use it as a residence, and she received possession of it upon signing the *Purchase Deed*.

3.     On April 16, 1998, the Debtor also subscribed a *Promissory Note* for $65,000.  The loan served the Debtor to obtain ownership of the Real Property with the assistance of the USDA, then known as Farmers Home Administration, through a program known as "Section 502 Direct Loan Program".  The *Promissory Note* established an annual interest rate of 6.75%, with monthly payments to be made the 16th of every month beginning on May 16, 1998.

4.     On April 16, 1998, the Debtor also executed a *Deed of Mortgage* No. 33 (the "*Mortgage Deed*") before Notary Public Rosa Permuy to create a voluntary mortgage on the Real Property to secure the loan obligation evidenced by the *Promissory Note* of $65,000.  The Debtor also requested government subsidy assistance by subscribing a document titled *Subsidy Repayment Agreement* pursuant to Section 521 of the Housing Act of 1949 (42 U.S.C. §1490a).  This *Agreement* indicates the circumstances in which the subsidy benefits awarded by the government to the benefit of the Debtor may be subject to recapture.  In essence, the subsidy recapture depends on whether the Debtor complies with the terms of payment, and uses the Real Property pursuant to the term of the agreement with the USDA.  The loan maturity was scheduled for April 16, 2031.

5.     On May 11, 1998 both the *Purchase Deed* and the *Mortgage Deed* were filed before the Property Registry, Puerto Rico, at seats 245 and 246, respectively, of Book 130 of the Daily Register.

6.     On February 15, 2007, the Registrar for the Property Registry issued a defect ("falta")

for the registration of the *Purchase Deed* and *Mortgage Deed*. Specifically, the notice stated that the Plat[1] lacked a Resolution of the Puerto Rico Permits Board, also known as A.R.Pe. The Registrar's notice indicated that pursuant to Article 70 of Puerto Rico's Mortgage Law, 30 L.P.R.A. § 2273, the defect ("falta") would be deemed consented ("consentida") on March 7, 2007, and lapsed ("caducada") on April 17, 2007.

7. On May 22, 2009, the Property Registrar issued another notice to the effect that there were defects ("faltas") to the registration of the *Purchase Deed* and *Mortgage Deed*. Specifically, the notice stated that the Plat lacked a Resolution of the Puerto Rico Permits Board. This second notice also indicated that pursuant to 30 L.P.R.A. § 2273, the defect would be deemed consented ("consentida") on June 11, 2009, and lapsed ("caducada") on July 21, 2009.

8. Both the *Purchase Deed* and the *Mortgage Deed* were withdrawn from the Property Registry on August 10, 2009.

9. On November 3, 2010 the *Purchase Deed* and the *Mortgage Deed* were again filed before the Property Registry, this time at seats 779 and 778, respectively, of Daily Register 299.

10. On November 16, 2010, the Debtor filed for bankruptcy relief in Case No. 10-10792 (the "Lead Case").

11. The Debtor reported in Schedule A of her bankruptcy petition that she is the owner of a residential real property in Urbanización Altamira, in the municipality of Fajardo, Puerto Rico. Schedule G lists the unexpired lease to Evelyn Estrada Toledo in relation to the Real Property.

12. The Debtor was insolvent when she filed for bankruptcy. She listed in her plan pre-petition arrears for the USDA's mortgage in the amount of $5,928.00 that were to be paid through the plan.

13. The *Promissory Note* states that the note was "made pursuant to Title V of the Housing Act of 1949".

14. The filing of the *Mortgage Deed* was made for or on account of an antecedent debt

---

[1] According to Webster's Online Dictionary, a "Plat" is a plan, map or chart of a piece of land with actual or proposed features. See http://www.merriam-webster.com/dictionary/plat.

5

owed by the Debtor to the USDA before such filing was made.

15. The filing of the *Mortgage Deed* would enable creditor the USDA to receive more than it would receive if the case was filed under a Chapter 7.

16. The USDA filed Proof of Claim No. 2-1, as amended by Proof of Claim No. 2-2, for $86,790.87. The claim includes the recoupment of the subsidy granted to the Debtor while she qualified to receive such benefit. The mortgage lien was constituted to guarantee the loan obligation claimed in such Proof of Claim No. 2 and is the one that the Debtor seeks to avoid in the current adversary proceeding.

Applicable Law & Discussion

*Standard for Summary Judgment*

Fed. R. Civ. P. 56, applicable to this proceeding through Fed. R. Bankr. P. 7056, provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed. R. Bankr. P. 7056 and In re Colarusso, 382 F.3d 51, 58 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

"The summary-judgment procedure authorized by [Fed. R. Civ. P. 56] is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10A Wright, Miller & Kane, Federal Practice and Procedure: 3d § 2712, p. 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); see also, López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. See also Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no

defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

The court is required to view the pleadings in their entirety when passing a request for summary judgment. 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2722 at 368. To do so, it may consider affidavits, depositions, admissions, answers to interrogatories and similar material to determine whether or not any of the post-pleading material suggests the existence of any other triable genuine issues of material fact. Id. § 2721 at 365-366. For purposes of Fed. R. Civ. P. 56, stipulations will be considered as admissions and "as facts in the case without resort to further evidence". Id. § 2724 at 399-400. See also Demelle v. ICC, 219 F.2d 619, 621 (1st Cir. 1955), cert. denied 76 S.Ct. 52, 350 U.S. 824, 100 L.Ed. 736 (parties stipulated that there was no genuine issue as to any material fact and that the sole issue before the court was the interpretation of the ICC's order), and Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez, 130 S. Ct. 2971, 2983, 177 L. Ed. 2d 838 (2010) (factual stipulations are formal concessions that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. "Thus, a judicial admission is conclusive in the case.")

In the instant case, upon stipulation by the parties of the material facts, summary judgment is warranted.

*Avoidance and recovery of pre-petition transfers*

"Equality of distribution among creditors is a central policy of the Bankruptcy Code." Begier v. IRS, 496 U.S. 53, 56 (1990). To further that policy, Sections 544, 547, 549 & 550 of the Bankruptcy Code, commonly known as the avoidance powers, provide the trustee with certain faculties to maximize the value of the bankruptcy estate and ensure common treatment of similarly situated creditors. These powers enable the trustee to recover property for the estate, set aside certain liens, avoid certain transfers, and reject or assume executory contracts and unexpired leases. See Nancy C. Dreher and Joan N. Feeny, Bankruptcy Law Manual, Volume 2 § 9:1 (2011-12), p. 203. Our current Bankruptcy Code follows the "strong arm" clause of the former Bankruptcy Act by giving the rights and powers of a judicial lien creditor as of the date of the bankruptcy. Id., § 9:2, p.

208 and 11 U.S.C. § 544(a)(1).

Section 547 deals with pre-petition preferential transfers made by debtors. "A preference involves payment of a debt that violates de bankruptcy principle of equal distribution among all creditors." Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 547.01 (16th ed. 2012). A "transfer" includes "the creation of a lien", and a "lien" is a "charge against or interest in property to secure payment of a debt", like the USDA's mortgage in the case at bar. 11 U.S.C. §§ 101(37) & 101(54). This definition must be construed "as broad as possible". Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 547.03 (16th ed. 2012), quoting from S. Rep. No. 989, 95th Cong., 2nd Sess. 27 (1978), reprinted in App. Pt. 4(e)(i). "A transfer is preferential only if the property transferred belongs to the debtor". Id. at ¶ 547.03[1][b][2]. In the instant case, there is no dispute that the USDA's mortgage constitutes a transfer of the Debtor's property. Whether it was preferential at the time it was refiled at the Property Registry and whether the trustee can avoid it will be subsequently discussed.

The drafters of the Bankruptcy Code explained the purpose of Section 547 as follows:

> The purpose of the preference section is two-fold. First, by permitting the trustee to avoid pre-bankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section-that of equality of distribution. H.R. Rep. No. 595, 95th Cong. 1st Sess. 177–78 (1977), U.S. Code Cong. & Admin. News, 1978, pp. 5787, 6138.

A trustee may avoid certain preference transfers if the requirements of Section 547(b), *infra*, are met:

> Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made--
>         (A) on or within 90 days before the date of the filing of the petition; or
>         (B) between ninety days and one year before the date of the filing of the petition,

9

if such creditor at the time of such transfer was an insider; and (5) that enables such creditor to receive more than such creditor would receive if-- (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.  11 U.S.C. § 547(b).

The extent of the Trustee's avoidance powers are determined by state law.  See Soto-Rios v. Banco Popular de P.R. (In re Soto-Rios), 662 F.3d 112, 116 (1st Cir. 2011) ("the bankruptcy trustee ... may ordinarily avoid any transfer of the property or obligation of the debtor to the extent allowed under state law"); Abboud v. The Ground Round, Inc., 482 F.3d 15, 20 (1st Cir. 2007); Trask v. BAC Home Loans Servicing, LP (In re Trask), 462 B.R. 268, 273 (B.A.P. 1st Cir. 2011).  After all, "property interests are created and defined by state law." Stern v. Marshall, 131 S. Ct. 2594, 2616, 180 L.Ed. 2d 475, 502 (2011), citing Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co., 549 U.S. 443, 451 (2007) and Butner v. United States, 440 U.S. 48, 55 (1979).  See also Taylor v. Rupp (In re Taylor), 133 F.3d 1336, 1341 (10th Cir. 1998) ("The existence and extent of [the debtor's interest in the property] is determined by state law"); Allan N. Resnick and Henry J. Sommes, 5 Collier on Bankruptcy, ¶ 547.06(1) (16th ed. 2012).  "Once that state law determination is made, however, we must still look to federal bankruptcy law to resolve" the extent to which that interest is property of the estate.  Rine & Rine Auctioneers, Inc. v. Myers (In re Rine & Rine Auctioneers, Inc.), 74 F.3d 854, 857 (8th Cir. 1996).

"The five characteristics of an avoidable transfer are that it: (1) benefit a creditor; (2) be on account of antecedent debt; (3) be made while the debtor was insolvent; (4) be made within 90 days before bankruptcy; and (5) enable the creditor to receive a larger share of the estate than if the transfer had not been made." Union Bank v. Wolas, 502 U.S. 151, 154-155 (1991).  See also BBVA v. Wiscovitch-Rentas (In re Net-Velazquez), 625 F.3d 34, 38 (1st Cir. 2010) ("Under section 547(b) of the Bankruptcy Code, the trustee of an estate in bankruptcy may avoid any transfer of an interest of the debtor in property made (1) to a creditor, (2) on account of an antecedent debt, (3) while the debtor was insolvent, (4) during the 90-day period preceding the filing of the petition, which (5) allowed such creditor to receive more than it would have under Chapter 7.")

The Debtor and the Trustee argue that in the instant case, the USDA's mortgage is an

avoidable transfer because it meets the five criteria set forth in Union Bank v. Wolas, 502 U.S. at 154-155, and sequel cases. They argue that the transfer effectuated by the refiling of the mortgage only benefits the USDA, that the mortgage arose on account of an antecedent debt to purchase the Real Property in 1998, that it was made while the Debtor was insolvent and within the 90-day period prior to the filing of the bankruptcy petition, and that it would enable the USDA to receive more than it would under Chapter 7. See Docket Nos. 28, 32 & 46. The USDA does not dispute any of these conditions. Instead, it argues that the delays in the attempts to have its *Mortgage Deed* registered at the Property Registry –which had been initially filed on May 11, 1998 but withdrawn on August 10, 2009 and refiled on November 16, 2010– were due to the Property Registry's serious backlog and delay in reviewing the documents that had been filed with it. It also avers that the transfer of the Debtor's Real Property occurred upon the signing of the Promissory Note on April 16, 1998 when the *Purchase Deed* was executed, not on November 3, 2010, when the *Mortgage Deed* was again filed for registration after a previous failed attempt. Finally, the USDA sustains because it is a governmental institution and the transfer in question took place in the context of a government claim, as a matter of public policy, its *Mortgage Deed* should not be avoided. See Docket No. 27.

It is well established that "under Puerto Rico law, recording is essential to the validity of a mortgage" and that "one that is not recorded is a **nullity**". In re Las Colinas, 426 F.2d 1005, 1016 (1st Cir. 1970) (emphasis added). Furthermore, "under Puerto Rico law, recording is a constitutive act for a mortgage, and without the existence of a mortgage, a creditor only has an unsecured personal obligation regarding the underlying debt." In re Soto-Rios, 662 F.3d at 121. See also Article 1875 of Puerto Rico's Civil Code, 31 L.P.R.A. § 5042 ("it is indispensable, in order that the mortgage may be validly constituted, that the instrument in which it is created be entered in the registry of property.") In order to be recorded, a mortgage must first be filed at the Property Registry. "The filing of a [mortgage] in the Property Registry creates a preliminary presentation entry that determines the priority of the reservation made in the daily log of presentations kept by the Property Registry and expires if a mistake is not corrected within sixty (60) days of the notice of defect." Perez-Mujica v. FirstBank P.R. (In re Perez-Mujica), --- B.R. ---, 2012 Bankr. LEXIS 2062 at **10-11, 2012 WL 1605147 at *4 (Bankr. D.P.R. May 8, 2012). If "a document is withdrawn or recalled

from the Property Registry before it is recorded, it ultimately entails the **voluntary dismissal and extinction of the entry of register**." Surita-Acosta v. Reparto Saman, Inc., 464 B.R. 86, 95-96 (Bankr. D.P.R. 2011) (emphasis added), citing Luis R. Rivera-Rivera, Derecho Registral Inmobiliario Puertorriqueño, San Juan, Jurídica Editors, 2002, pp. 277-278, and Roig Commercial Bank v. Torres Dueño, 614 F. Supp. 913 (D.P.R. 1985). On the other hand, if a document gets eventually recorded, its registration date will relate back to the date when it was filed. Article 53 of Puerto Rico's Mortgage Law, 30 L.P.R.A § 2256; Rigores v. Registrador, 165 D.P.R. 710, 715 [fn. 2] (2005). In the instant case, the *Mortgage Deed* was withdrawn from the Property Registry on August 10, 2009. Upon that withdrawal, the USDA's mortgage became *ipso facto* "an unsecured personal obligation regarding the underlying debt". In re Soto-Rios, 662 F.3d at 121. Because the *Mortgage Deed* was refiled on November 3, 2010, pursuant to 30 L.P.R.A § 2256, its ultimate registration can only relate back to that date, which falls within the 90-days provided in Section 547(b) of the Bankruptcy Code.

The court thus finds that in the case at bar, the five criteria set in Union Bank v. Wolas, 502 U.S. at 154-155, are met: (1) the refiling of the *Mortgage Deed* on November 3, 2010 only benefits the USDA inasmuch as it would make it a secured creditor when it had been unsecured since August 10, 2009; (2) the mortgage arose on account of an antecedent debt to purchase the Real Property on April 16, 1998; (3) the Debtor was insolvent when she filed for bankruptcy and thirteen days prior[2] when the *Mortgage Deed* was refiled at the Property Registry; (4) the transfer was made within the 90-day period prior to the filing of the bankruptcy petition; and (5) it would enable the USDA to receive more than it would under Chapter 7.

The USDA cites In re 229 Main Street, 262 F.3d 1 (1st Cir. 2002), and In re Soto-Rios, 662 F.3d 112, in support of its contention that the refiling of the *Mortgage Deed* is not avoidable under Section 547 of the Bankruptcy Code. See Docket Nos. 27 & 33. But the facts in those two cases are inapposite to the instant case. In In re 229 Main Street, 262 F.3d 1, the Commonwealth of Massachusetts expended funds for an emergency environmental cleanup of the debtor's property and

---

[2] A debtor is deemed insolvent within 90 days prior to the bankruptcy petition pursuant to 11 U.S.C. § 547(f). Thus, when the transfer was made on November 3, 2010, the Debtor was insolvent.

notified the debtor that it intended to record a lien against the property under the state environmental superlien statute pursuant to Mass. Gen. Laws ch. 21E, § 13 (the environmental superlien statute). The debtor then filed its bankruptcy petition and argued that further pursuance of lien perfection by the Commonwealth violated the automatic bankruptcy stay. On appeal, the First Circuit for the United States Court of Appeals (the "First Circuit") affirmed the District and Bankruptcy Courts ruling that the Commonwealth's conduct was excepted from the automatic stay under 11 U.S.C. § 362(b)(3), since it constituted an act to perfect an interest in property in accordance with a valid authorizing statute. The *ratio decidendi* was that although the Commonwealth did not perfect its lien prior to the filing of the petition, its expenditure of funds and pursuit of the lien sufficed to establish an interest in the property, and the simultaneous post-petition creation and perfection of the lien under the superlien statute was thus within the exception to the automatic stay. The First Circuit also ruled that the superlien statute expressly provided that the Commonwealth's interest, once perfected, was effective against previously acquired rights in the property. No such superlien has been alleged in the instant case.

In In re Soto-Rios, 662 F.3d 112, the bank filed its mortgage deeds at the Property Registry but were pending recordation when bankruptcy was filed three years later. The First Circuit affirmed the District and Bankruptcy Courts ruling that the relation back provision in Article 53 of Puerto Rico's Mortgage Law, 30 L.P.R.A. § 2256, established the filing at the Property Registry as the priority marker and that the bank had obtained a concrete, pre-petition debt when it filed the mortgages for recordation. The First Circuit determined that the exceptions to the automatic stay and the Trustee's strong arm power applied and that pursuant to Article 53 of Puerto Rico's Mortgage Law, the transfers were "perfected" for purposes of Section 547 of the Bankruptcy Code upon the date of filing of the mortgages, which in that case was well outside the 90-day preference window. In re Soto-Rios, 662 F.3d at 123. The essential difference between the instant case and Soto-Rios lies in the period between the filing of the mortgage before the Property Registry and the petition date. In the case at bar, the USDA refiled its mortgage on November 3, 2010, that is, 13 days prior to the filing of the bankruptcy petition and thus, within the 90-day preference window.

Lastly, the USDA claims that because it is a governmental institution and the transfer in

question took place in the context of a government loan, as a matter of public policy, its *Mortgage Deed* should not be avoided. To support its contention, the USDA broadly affirms that "some rights exist pursuant to 7 C.F.R. Part 3550, which provides the policies and regulations for the Direct Single Family Housing Loan Programs". Notwithstanding, § 3550.211(e) of those regulations establishes that when a bankruptcy petition is filed, the Bankruptcy Code will govern. No public policy can be inferred from such provision on the USDA's behalf. Neither was preemption averred over Puerto Rico's Mortgage Law.

Section 547(b)(1) of the Bankruptcy Code provides that the Trustee's avoidance "may avoid any transfer of an interest of the debtor in property to or for the benefit of a creditor". 11 U.S.C. § 547(b)(1). Section 101(10)(A) defines a "creditor" as an "entity that has a claim against the debtor" and pursuant to Sections 101(15) and 101(27), "entity" entails "governmental units", which includes in turn the United States government and its dependencies like the USDA. 11 U.S.C. §§ 101(10)(A), 101(15) & 101(27). Moreover, "[w]hile the Bankruptcy Court is a court of equity, the Bankruptcy Code 'does not authorize freewheeling consideration of every conceivable equity.' The Bankruptcy Court may not, in the exercise of its equitable powers, enforce its view of sound public policy at the expense of the interests the Code is designed to protect." Midlantic Nat'l Bank v. N.J. Dept. of Envt'l. Prot., 474 U.S. 494, 514 (1986) (Rehnquist, J., dissenting, quoting N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 527 (1984)). Also see In re Tudor, 342 B.R. 540, 568 (Bankr. S.D.Oh. 2005) (quoting Rehnquist's dissent); In re Mircrofab, Inc., 105 B.R. 161, 167 (Bankr. D.Mass. 1989) (quoting Rehqist's dissent). Therefore, the USDA is a creditor like any other in the instant case and as such is subject to Puerto Rico's Mortgage Law when attempting to secure a mortgage lien.

## Conclusion

For the reasons stated herein, the Debtor's and the Trustee's *Motion for Summary Judgment* (Docket Nos. 26, 28, 32 & 46) is hereby granted and the USDA's *Opposition* thereto and cross motion for summary judgment (Docket No. 27 & 33) are hereby denied. Consequently, upon the avoidance of the USDA's *Mortgage Deed,* the USDA's Claim Register No. 2 is hereby allowed as a general unsecured claim. The USDA is further ordered to return to the Trustee the Debtor's mortgage note over her Real Property for cancellation purposes at the Property Registry.

14

Judgment shall be entered accordingly.

In San Juan, Puerto Rico, this 13th day of June 2012.

SO ORDERED.

Enrique S. Lamoutte
United States Bankruptcy Judge